NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LITGO NEW JERSEY, INC. and SHELDON GOLDSTEIN, | : : : : | |
| Plaintiffs, | : : | Civil No. 06-2891 (AET) |
| v. | : : | **MEMORANDUM & ORDER** |
| LISA JACKSON, in her official capacity as Commissioner of the New Jersey Department of Environmental Protection, | : : : : : | |
| Defendant. | : : | |

THOMPSON, U.S.D.J.

      This matter comes before the Court on Defendant Commissioner Lisa Jackson's Motion to Dismiss the Complaint brought by Litgo New Jersey, Inc. ("Litgo") and Sheldon Goldstein ("Goldstein") (together, "Plaintiffs") for declaratory and injunctive relief pursuant to the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), and the Declaratory Judgment Act, 28 U.S.C. § 2201. For the reasons stated below, Defendant's Motion to Dismiss is denied.

Facts

      Plaintiffs seek a declaratory judgment regarding Defendant's liability for contamination at the property owned by Litgo and located at 40 Haynes Road, Somerville, New Jersey ("Site"). Plaintiffs also ask this Court to order Defendant, in her official capacity as Commissioner of the New Jersey Department of Environmental Protection ("NJDEP"), to take necessary action to

investigate, abate, and remediate groundwater contamination at the Site.

In 1983, the New Jersey Superior Court ordered the State of New Jersey to remove more than 12,000 containers of hazardous materials from an illegal dumpsite in Newark, New Jersey. Pursuant to the court's order, the hazardous materials were to be stored in a properly licensed facility, capable of handling such materials.  NJDEP removed the hazardous materials from Newark and transported them to the Site.  The warehouse on the Site was not properly licensed for storage of hazardous materials.  In addition, the drums of hazardous materials at the Site were improperly stored, and many containers were corroded and leaking.  In 1984, a report commissioned by NJDEP concluded that the Site constituted an immediate danger to life and public health.  NJDEP sought proposals for sampling and removal of the hazardous materials stored and discharged at the Site.  This work was awarded to Clean Ventures, Inc ("Clean Ventures").  Plaintiffs allege that Clean Ventures dumped hazardous materials into pools and waste piles, and did not comply with NJDEP regulations governing waste removal.  NJDEP never intervened in Clean Ventures' commission of the removal, nor did NJDEP conduct or require sampling to insure that the remediation was properly performed.  In September, 1987, NJDEP waived further post cleanup sampling.

While remediation work was ongoing, Goldstein entered into negotiations with Alfred Sanzari ("Sanzari"), the owner of the Site.  Sanzari disclosed that the Site contained hazardous materials, and that he was remediating the Site in compliance with the New Jersey Environmental Cleanup Responsibility Act, N.J. Stat. Ann § 13:1K-6 et seq.  On August 6, 1985, the parties entered into an Agreement of Sale, however, Sanzari later refused to sell whereupon Goldstein sued Sanzari to enforce the Agreement of Sale.  Sanzari was subsequently informed

that the Site groundwater testing showed significant concentrations of trichloroethylene ("TCE"). Sanzari submitted a plan ("Clean Up Plan") to NJDEP for remediation of the TCE. NJDEP approved the plan on October 31, 1989, but ordered further remediation not contemplated by the parties. NJDEP also noted that the groundwater contamination may have contributed to offsite contamination. Following this development, Goldstein disavowed the Agreement of Sale, and Sanzari sued to enforce it. A state court ruled in favor of Sanzari, and Goldstein took title to the Site on February 14, 1990. Pursuant to the terms of the sale, Goldstein assumed Sanzari's obligations under the Clean Up Plan. Goldstein transferred the title for the Site to Litgo on April 18, 1990, and Litgo assumed Goldstein's obligations under the Clean Up Plan. In February, 2000, Litgo excavated soil from the Site in an effort to remediate the contamination. On September 4, 2001, NJDEP determined that no further action was required. Litgo continued to test groundwater at the Site and determined that hazardous materials still present in the groundwater threaten municipal water wells in Manville Borough, located half a mile from the Site.

Plaintiffs maintain that the contamination stems from NJDEP's use of the site for hazardous material storage and its negligent supervision of Clean Ventures' inadequate and negligent remediation of the Site. Plaintiffs notified NJDEP of the presence of hazardous materials in the groundwater, and requested that the conditions be addressed, which NJDEP failed to do. Plaintiffs filed the instant action, seeking a declaratory judgment concerning Defendant's liability, and injunctive relief under § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), as well as costs, fees, and attorney's fees.

3

Discussion

Defendant moves this Court to find that (1) the Court lacks personal jurisdiction over Goldstein pursuant to Fed. R. Civ. P. 12(b)(2)[1], and that both Plaintiffs lack standing; (2) that the Plaintiffs do not allege that hazardous materials were ever stored at the site, thus they fail to state a claim for which relief may be granted, Fed. R. Civ. P. 12(b)((6); and/or that Plaintiffs have failed to join a necessary party, Fed. R. Civ. P. 12(b)(7) and 19.[2]

A.   Standing

As a threshold matter, Defendant argues that the Plaintiffs do not have standing. The constitutional prerequisites for standing require that Plaintiffs suffered an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. In addition, there must be a causal connection between the injury and the conduct complained of, and it must be likely, not merely speculative, that a favorable decision will redress the injury. Storino v. Borough of Point Pleasant Beach., 322 F.3d 293, 296 (3d Cir. 2003) (citations omitted). With respect to the latter elements, causality and redressability, the Court finds that Plaintiffs clearly and adequately plead sufficient

---

[1]   Defendant argues that the Court does not have personal jurisdiction over Goldstein because he is a Florida resident. This argument is unfounded inasmuch as "[a] nexus between the **defendant,** the forum and the litigation is the essential foundation of in personam jurisdiction." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (emphasis added). Defendant's motion under Rule 12(b)(2) is denied, however, the Court will consider standing as a basis for Defendant's Motion pursuant to Rule 12(b)(6).

[2]   Defendant argues that she is not amenable to suit in this action because she was not Commissioner of NJDEP when the events giving rise to the Complaint occurred. The Court disagrees; Plaintiffs seek prospective enforcement of RCRA, which comes within the exception to the Ex Parte Young rule. See Allegheny County Sanitary Auth. v. United States Envtl. Prot. Agency, 732 F.2d 1167, 1174 (3d Cir. 1984); see also Middlesex County Bd. of Chosen Freeholders v. N.J. Dep't of Envtl. Prot., 645 F. Supp. 715, 722 (D.N.J. 1986).

facts. The Court need only determine whether Plaintiffs suffered an "injury in fact." Storino, 322 F.3d at 296.

It is undisputed that the Site is contaminated, and that Plaintiffs are amenable to suit for that condition, should an aggrieved party decide to file an action against them. Defendant alleges that Litgo cannot have suffered an injury because it is headquartered in Suffern, New York. Irrespective of where it is headquartered, Litgo is the owner of the Site and may suffer economic harm due to the alleged contamination. This, by itself, is sufficient injury to confer standing under RCRA. See DMJ Assocs. L.L.C. v. Capasso, 288 F. Supp. 2d 262, 271 (E.D.N.Y. 2003) (finding that risk of loss to security interest holder was injury in fact).

Goldstein is in a different position. He does not own any interest in the Site, nor any adjacent property, and has not claimed that he suffers any risk of physical or aesthetic harm from the contamination there. His risk stems from his potential financial liability as a past owner of the Site.[3] See Interfaith Cmty. Org. v. Honeywell Int'l Inc., 2004 F. Supp. 2d 804, 810-11 (D.N.J.), rev'd in part on reconsideration, 215 F. Supp. 2d 482 (D.N.J. 2002).

The Court finds first that the potential risk of harm to Goldstein, i.e., cost of litigation and financial harm, is concrete and particularized. Hosp. Council of W. Pa. v. City of Pittsburgh, 949 F.2d 83, 87 (3d Cir. 1991); see also DMJ Assocs. L.L.C., 288 F. Supp. 2d at 271; Digital Angel

---

[3] In Plaintiffs' Opposition Brief, Plaintiffs argue that Goldstein became subject to Sanzari's obligations under the Cleanup Plan when Goldstein was compelled to purchase the Site. (Pls.' Br. at 3.) Although Litgo later agreed to assume this obligation, the text of the Cleanup Plan is not before the Court, and, for purposes of this Motion to Dismiss, the Court may not assume that the Cleanup Plan indemnifies Goldstein against claims brought by third parties. In addition, Goldstein may be liable under various state and federal laws and regulations, imposing liability on past owners of contaminated sites. This Court must accept as true Goldstein's contention that he is potentially liable under these laws and regulations. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

Corp. v. Corporativo SCM, S.A. de C.V., No. 05-1060, 2005 WL 3357084, at *4 (D. Minn. Dec. 9, 2005).  Next, the Court must determine if risk is "actual or imminent, not conjectural or hypothetical."  Storino, 322 F.3d at 296.  Although Goldstein need not "sit idly by until injury is inflicted" in the form of a lawsuit, see Interfaith Cmty. Org. v. AlliedSignal, Inc., 928 F. Supp. 1339, 1349 (D.N.J. 1996) (citations omitted), the threat must be "so imminent as to be 'certainly impending.'"  Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 122 (3d Cir. 1997).  By contrast, litigation risk is "hypothetical" or "attenuated" when multiple contingencies must occur before plaintiff would be amenable to suit.  Storino, 322 F.3d at 297-98; see also So. Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency., 625 F.2d 231, 239 (9th Cir.), cert. denied, 449 U.S. 1039 (1980); Seneca Falls Cent. Sch. Dist. v. Liverpool Cent. Sch. Dist., 728 F. Supp. 910, 913 (W.D.N.Y. 1990).  Here, the threat of suit against Plaintiffs is not attenuated or hypothetical.  Assuming that the groundwater contamination is threatening the Manville Borough wells, Plaintiffs are in the zone of liability.  No apparent contingencies would have to occur—any person may file suit against the Plaintiffs at any time.  O'Shea v. Littleton, 414 U.S. 488, 497 (1974); So. Lake Tahoe, 625 F.2d at 239.  Nor can Plaintiffs take any reasonable action to remove themselves from the zone of liability.  O'Shea, 414 U.S. at 497 (finding it "speculative" that likelihood petitioners would be charged with violating contested statutes); Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 675 (9th Cir. 1988) (same). see also DMJ Assocs. L.L.C., 288 F. Supp. 2d at 270 (noting that plaintiff cannot engage in alternate activity to avoid harm).  Although Plaintiffs had not alleged any words or acts giving rise to an immediate or known threat of litigation at the time they filed this action, the possibility of litigation is not speculative: Defendant implicitly threatened Plaintiffs with financial harm

when she stated in her reply brief that "[t]he language of the RCRA statute makes plain that [NJDEP], were it required by the court to conduct further cleanup tasks, can seek to recover the cost of such work from any '**past or present owner**' of the site." (Def.'s Reply Br. at 3) (emphasis in original). It is, therefore, reasonable to conclude that the threat of future litigation is not "imaginary, illusory, speculative or fabricated." Joint Stock Soc'y v. UDV N. Am., Inc., 53 F. Supp. 2d 692, 702 (D. Del. 1999).

Finally, the Court has already determined that Litgo has an independent basis for standing, and in light of the fact that Goldstein may apply to intervene as a matter of right, 42 U.S.C. § 6972(b)(2)(E), considerations of judicial economy militate strongly in favor of permitting Goldstein to remain a party in this matter in order that the Court may settle the rights and obligations of the parties. See, e.g., Venegas v. Skaggs, 867 F.2d 527, 530-31 (9th Cir. 1989); see also Fed. R. Civ. P. 24(b).

    B.    Failure to State a Claim

Defendant argues that Plaintiffs do not allege that hazardous materials were ever stored at the site, therefore, Plaintiffs fail to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court may dismiss a complaint pursuant to this rule only where it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding a motion to dismiss, all allegations in the complaint must be accepted as true, and all reasonable factual inferences are viewed in the light most favorable to the plaintiff. See Conley, 355 U.S. at 48; Miller Yacht Sales, Inc., 384 F.3d at 97. Plaintiff clearly alleged that hazardous materials were stored at the Site, and that Defendant

was responsible for their presence and the resulting contamination.

  C.  Joinder of Necessary Parties

Defendant argues that the Complaint must be dismissed because Plaintiffs failed to join Sanzari and Clean Ventures as defendants in this action, and further argues that, absent them, the Court cannot provide complete relief to the current parties. Fed. R. Civ. P. 19(a) provides that

> [a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction . . . shall be joined as a party . . . if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring . . . obligations by reason of the claimed interest.

Defendant offers no explanation as to why Sanzari's and Clean Venture's absence will prevent this Court from according complete relief among the parties, and Plaintiff further points out that Defendant may implead Sanzari and Clean Ventures pursuant to Fed. R. Civ. P. 14(a).

CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this  15th  day of November, 2006,

ORDERED that Defendant's Motion to Dismiss [3] is DENIED.

             /s/ Anne E. Thompson
             ANNE E. THOMPSON, U.S.D.J.