NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LITGO NEW JERSEY, INC, and
Sheldon GOLDSTEIN,

          Plaintiffs,

v.

Bob MARTIN, in his official capacity as the
Commissioner of the New Jersey Department
of Environmental Protection, et al.,

          Defendants.

Civ. No. 06-2891 (AET)

OPINION & ORDER

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court upon Plaintiffs Litgo New Jersey, Inc., and Sheldon Goldstein's Motion to Certify Issues for Appeal [docket # 385]. The United States Defendants [386] and the Sanzari Defendants [387] oppose the motion, and the Sanzari Defendants alternatively cross-move to certify their own issues for interlocutory appeal [387]. The Court has decided the matter upon consideration of the parties' written responses, without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiffs' motion and the Sanzari Defendants' cross-motion are both denied.

### BACKGROUND

The Court presumes that all parties are familiar with the procedural history and facts of this case and therefore provides only a brief overview. The primary issue in this case is the presence of TCE and other hazardous substances at and emanating from the Litgo Property and

1

the Defendants' alleged responsibility for these hazardous substances.  Following a seventeen-day bench trial, on June 10, 2010, the Court entered findings of fact and conclusions of law regarding the parties' liability under CERCLA, RCRA, the New Jersey Spill Act, and the New Jersey Closure Act.  The Court found that the United States Defendants, the Sanzari Defendants, and Plaintiffs are liable under CERCLA, that the Sanzari Defendants and Plaintiff Litgo are liable under the Spill Act, and that the United States Defendants and the Commissioner are liable under RCRA.  The Court dismissed all claims brought under the Closure Act.

After making its determination on liability, the Court went on to consider how damages should be equitably allocated under § 113 of CERCLA and the Spill Act.  The Court initially allocated under § 113 the CERCLA-recoverable costs as follows: 65% to Plaintiffs, 32% to the Sanzari Defendants, and 3% to the United States Defendants.[1]  The Court further found that Plaintiffs were responsible for 67% of costs recoverable only under the Spill Act, while the Sanzari Defendants were responsible for 33% of those costs. The Court did not set an amount of damages, as it had been decided at trial that the damages portion of the proceeding would be bifurcated and resolved after a determination on liability had been reached.

Following the June 10 Opinion, Plaintiffs and the Sanzari Defendants filed motions asking the Court to reconsider its Opinion on liability and the equitable allocation of costs.  In an Opinion filed on January 7, 2011, the Court rejected Plaintiffs' arguments that Plaintiff Goldstein could not be liable as a current operator pursuant to § 113 of CERCLA and that the Court should have held a separate hearing on the equitable allocation of costs.  We also rejected the argument from both movants that the Court should have allocated an orphan share to Columbia Aircraft.

---

[1]The Court originally assigned equitable shares of 50% to Plaintiffs, 25% to the Sanzari Defendants, 2% to the United States Defendants, and an orphan share of 23% to the Commissioner.  The final allocation was determined after distributing the Commissioner's orphan share pro rata between Plaintiffs, the Sanzari Defendants, and the United States Defendants.

In addition, both movants also set out a number of reasons why they believed that the Court's equitable allocation of costs was misguided.  The Court rejected most of those arguments, but after reconsidering the equitable issues, particularly the Sanzari Defendants' exercise of due care, the Court modified the equitable allocation of CERCLA-recoverable costs as follows: 70% to Plaintiffs; 27% to the Sanzari Defendants; and 3% to the United States Defendants.

While the motions for reconsideration were being briefed, the Plaintiffs and the Commissioner reached a settlement agreement and applied for a consent decree on October 22, 2010 [370].  The United States Defendants and the Sanzari Defendant objected to the Consent Decree, arguing that certain of its provisions were ambiguous and that it could be interpreted so as to contravene the June 10 Opinion and excuse Plaintiffs from their share of the liability.  The Court heard oral argument on the motions for reconsideration and the application for a consent decree on January 3, 2011, and after filing its Opinion on the motions for reconsideration, the Court conducted a conference call on February 24, 2011.  Pursuant to these meetings, the Plaintiffs and the Commissioner agreed to accept a modification to the Consent Decree proposed by the United States Defendants, and in return, the United States Defendants dropped their objections.  The revised settlement agreement is currently being re-published in the New Jersey Register for a thirty-day comment period, after which time the parties will re-apply for a consent decree.  In addition, Plaintiffs agreed to dismiss their RCRA claim for injunctive relief against the United States, subject to reopener if the United States pursues Plaintiffs for future cleanup of the site.

Finally, the parties have agreed to participate in an informal process to determine Plaintiffs' recoverable past costs under CERCLA and the Spill Act.  Representatives of the parties will meet to review Plaintiffs' costs, and the parties will inform the Court if they are able

to reach an agreement on the total amount of recoverable costs.  The Court has indicated its

intent to proceed with a damages hearing if the parties are not able to reach an agreement.

Plaintiffs now move to certify four issues for interlocutory appeal, pursuant to 28 U.S.C.

§ 1292(b): (1) whether the Court erred in finding Plaintiff Goldstein liable as a current operator

under § 107(a)(1) of CERCLA; (2) whether the Court's equitable allocation of CERCLA-

recoverable costs was an abuse of discretion; (3) whether the Court's equitable allocation of

costs under the Spill Act was an abuse of discretion; (4) whether the Court was wrong to dismiss

Plaintiffs' RCRA claim against the Sanzari Defendants; and (5) whether the Court was wrong to

dismiss Plaitiffs' Closure Act claim against the Sanzari Defendants.

<u>ANALYSIS</u>

## A. Legal Standard

A district court may certify an order for interlocutory appeal when the party seeking

certification shows that the order "[1] involves a controlling question of law [2] as to which there

is substantial ground for a difference of opinion and [3] that an immediate appeal from the order

may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *Katz v.

Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).  The burden is on the movant to

demonstrate that all three requirements are met.  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th

Cir. 2010); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004).  Even if all

three requirements are met, the decision to grant certification remains wholly within the district

court's discretion.  *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir.1976) (citing *Katz*, 496 F.2d

at 754).  Section 1292(b) certification should be used sparingly because only "exceptional

circumstances justify a departure from the basic policy of postponing appellate review until after

the entry of a final judgment."  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)

4

(internal quotations omitted).  Certification was not intended merely "to provide early review of difficult rulings in hard cases."  *Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*, 2011 WL 601585, at *2 (D.N.J. Feb. 17, 2011) (internal quotations omitted).

    1.    <u>Controlling question of law</u>

The Third Circuit has defined a "controlling question of law" as encompassing not only "every order which, if erroneous, would be reversible error on final appeal," but also those orders which are "serious to the conduct of the litigation, either practically or legally."  *Katz*, 496 F.2d at 755.  On a practical level, saving the district court's time and the litigants' expenses is "a highly relevant factor."  *Id.*  Even an order involving the exercise of discretion may be considered a controlling question of law if it "truly implicates the policies favoring interlocutory appeal."  *Id.* at 756.  A district court is to be guided "by a practical application of those policies, not by a mechanical application of labels such as 'discretionary' or 'nondiscretionary.'"  *Id.*

    2.    <u>Substantial ground for difference of opinion</u>

Section 1292(b)'s second factor, a substantial ground for difference of opinion, "must arise out of genuine doubt as to the correct legal standard."  *In re Dwek*, 2011 WL 487582, at *4 (D.N.J. Feb. 4, 2011) (quotation and citation omitted).  Such doubt can stem from conflicting precedent, the absence of controlling law on a particular issue, or novel and complex issues of statutory interpretation.  *See New Jersey, Dept. of Treasury v. Fuld*, 2009 WL 2905432, at *2 (D.N.J. Sept. 8, 2009) (citations omitted).  However, a movant's mere disagreement with the district court's ruling is not a substantial ground for difference of opinion.  *In re Dwek*, 2011 WL 487582, at *4.

    3.    <u>Materially advance termination of litigation</u>

A § 1292(b) certification materially advances the ultimate termination of the litigation where the interlocutory appeal eliminates: (1) the need for trial; (2) complex issues that would

complicate the trial; or (3) issues that would make discovery more costly or burdensome.  *See Fuld*, 2009 WL 2905432, at *2 (citing *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994)).

### B. Application

During the conference call on February 24, 2011, the Court suggested that it was willing to consider a motion for § 1292(b) certification, given the complexity of this case and the intricacy of the legal and equitable issues presented.  While we see no basis for altering our prior rulings, we recognize that the unique facts of this case may give rise to a difference of opinion as to the correct application of the various statutory schemes involved.  However, in light of the present status of this case, we find that certifying an interlocutory appeal at this stage would not materially advance the termination of the litigation and may instead delay resolution and lead to piecemeal appeals.  Accordingly, the motions are denied.

First, the appeal Plaintiffs seek would not eliminate a trial, simplify a trial, or make discovery less burdensome.  *See Fuld*, 2009 WL 2905432, at *2.  This matter has already involved extended discovery, a seventeen-day trial, and a host of post-trial motions.  Plaintiffs' appeal would not prevent unnecessary litigation; rather, the issues presented for appeal have already been litigated thoroughly.  *See Johnson v. Alldredge*, 488 F.2d 820, 823 (3d Cir. 1973) (stating that purpose of § 1292(b) is to resolve legal issues "without requiring the parties to first participate in a trial that may be unnecessary").  Nearly five years since this case was filed, the only issue remaining is a determination of the amount of past costs Plaintiff can recover under CERCLA and the Spill Act.  The parties are currently working to reach an amicable agreement on the amount of recoverable past costs.  Should they fail, the Court is prepared to resolve that issue in a hearing, which we expect would be significantly shorter than the original trial on liability.  Simply put, the end is near, and we see no reason to delay it further.

Second, permitting an interlocutory appeal in this case would almost certainly lead to multiple appeals, thereby "deviat[ing] from the ordinary policy of avoiding piecemeal appellate review . . . ." *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996) (quotation and citation omitted).  Once the question of past costs is resolved, the Court is prepared to issue a final judgment, and the parties can then appeal all aspects of the case at once.  If instead the Plaintiffs are permitted to appeal their four issues now, then final judgment would need to be delayed pending the resolution of that appeal.  If our rulings are affirmed on appeal, then the parties can simply return to the district court to resolve the damages issue; resolution of the case will be merely delayed.  However, if the Court of Appeals reverses and remands any aspect of the case, the parties would need to re-litigate those issues and, in all likelihood, the parties would take appeals from this second round of litigation as well.  Plaintiffs argue that certifying the question of Goldstein's CERCLA liability or the Court's CERCLA allocation will somehow simplify matters going forward.  We disagree.  At this point, anything that would require the Court to revisit its equitable allocation will only delay the resolution of this case and, given the zero-sum nature of the allocation, will almost certainly spawn further appeals.

Finally, two of the questions Plaintiffs seek to appeal are premised on this Court's abuse of discretion.  Certainly Plaintiffs are entitled to ultimate appellate review of those decisions, but the equitable and discretionary nature of those rulings makes them inappropriate for interlocutory review.  Although an order involving discretion can be certified under § 1292(b), *see Katz*, 496 F.2d at 756, the archetypal case for certification occurs when the court of appeals "can decide quickly and cleanly without having to study the record," *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676–77 (7th Cir. 2000).  The Court's equitable allocation of recoverable costs required an intensive analysis of the complex facts of this case.  For the Court of Appeals to provide meaningful review of that allocation would require a similarly thorough examination of

the facts, and an interlocutory appeal is simply not the proper setting for such an examination. *See Johnson*, 488 F.2d at 822 (doubting propriety of § 1292(b) certification where certified question "comprehends factual as well as legal matters, requiring a factual decision . . . as well as a legal decision"); *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 210 (D.N.J. 1996) (stating that § 1292(b) was "not designed to secure appellate review of 'factual matters' or of the application of the acknowledged law to the facts of a particular case").

<u>CONCLUSION</u>

For the foregoing reasons, IT IS on this 25th day of March, 2011,

ORDERED that Plaintiffs' Motion to Certify Issues for Appeal [docket # 385] is DENIED; and it is further

ORDERED that the Sanzari Defendants' Cross-Motion for Certification [docket # 387] is DENIED.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.