RECEIVED
APR 16 2012
AT 8:30_____M
WILLIAM T. WALSH
CLERK

NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LITGO NEW JERSEY, INC, and Sheldon GOLDSTEIN, <br><br> Plaintiffs, <br><br> v. <br><br> Bob MARTIN, in his official capacity as the Commissioner of the New Jersey Department of Environmental Protection, et al., <br><br> Defendants. | Civ. No. 06-2891 (AET) <br><br> OPINION & ORDER |

THOMPSON, U.S.D.J.

### I.   INTRODUCTION

This matter has come before the Court on Plaintiffs Litgo New Jersey, Inc. ("Litgo") and Sheldon Goldstein's Motion for Litigation Costs Pursuant to 42 U.S.C. § 6972(e) [docket # 414]. Defendants United States of America, United States Department of the Army, United States Department of the Air Force, and United States Department of the Navy (collectively, "United States Defendants") oppose the Motion [427]. The Court has decided the motion after taking into consideration the parties' submission without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons that follow, Plaintiffs' motion will be denied.

### II.   BACKGROUND

The Court presumes that all parties are familiar with the procedural history and facts of this case and therefore it will provide only a brief overview. This case arises out of a dispute involving the presence of trichloroethylene ("TCE") and other hazardous substances at, and emanating from, the parcel of land located at 40 Haynes Street in the Borough of Somerville,

1

New Jersey, referred to on local tax maps as Block 50, Lots 3, 4, 13, and 14 (the "Litgo Property") and the Defendants' alleged responsibility for these hazardous substances.

Plaintiffs initiated this action on June 26, 2006, by filing a Complaint against the Commissioner of the New Jersey Department of Environmental Protection pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.A. § 6901, et seq. [1].

Plaintiffs subsequently filed five Amended Complaints, naming additional defendants to the lawsuit including the United States Defendants and adding claims against the later-added defendants pursuant to RCRA, as well as the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C.A. § 9601, et seq., New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S. A. 58:10-23.11f(a)(2), and New Jersey Sanitary Landfill Facility Closure and Contingency Fund Act ("Closure Act"), N.J.S.A. 13:1E-100 (together, "the Environmental Statutes"). [24, 52, 106, 195, 215]. In their Fifth Amended Complaint, Plaintiffs sought injunctive relief pursuant to RCRA requiring the Commissioner and United States Defendants, among others, to remediate the Litgo Property. (Fifth Amend. Compl. ¶ 2) [215].

From January 19, 2010 through February 12, 2010, this Court held a seventeen-day bench trial regarding the parties' liability under the Environmental Statutes. See (June 10, 2010 Op.) [358]. The Court found that the United States Defendants, the Sanzari Defendants and Plaintiffs are liable under either § 107 or § 113 of CERCLA and the Sanzari Defendants and Plaintiff Litgo are liable under the Spill Act. In addition, the Court found that the United States Defendants and the Commissioner were liable persons under RCRA but deferred the order of injunctive relief until it could hear further argument on the matter. (Id. at 78 ("The Court *may* grant Plaintiffs injunctive relief against the parties liable under RCRA." (emphasis added)); id. at 61 ("Because

the United States Defendants contributed to the storage and disposal of hazardous wastes which have been linked to the contamination at the Litgo Property they are liable under RCRA and an injunction *may* be ordered against them on behalf of Plaintiffs." (emphasis added))).

After making its determination on liability, the Court decided how damages should be equitably allocated under § 113 of CERCLA and the Spill Act. The Court initially allocated the CERCLA-recoverable costs as follows: 65% to Plaintiffs, 32% to the Sanzari Defendants, and 3% to the United States Defendants.[1] The Court further found that Plaintiffs were responsible for only 67% of costs recoverable under the Spill Act, while the Sanzari Defendants were responsible for 33% of those costs. In a later opinion following motions for reconsideration, the Court modified the equitable allocation of CERCLA-recoverable costs as follows: 70% to Plaintiffs; 27% to the Sanzari Defendants; and 3% to the United States Defendants. *See* (Jan. 7, 2011 Op. & Order, at 18).

Following the determination of liability, the parties participated in informal negotiations concerning the settlement of their various claims. Plaintiffs agreed to dismiss their claim for injunctive relief against the United States Defendants under § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), with prejudice, subject to a re-opener should the United States Environmental Protection Agency pursue Plaintiffs to clean up the Litgo Site under CERCLA in the future [383]. Plaintiffs, however, reserved their right to seek litigation costs from the United States Defendants as a "prevailing party" under Section 7002(e) of RCRA. (*Id.*). Plaintiffs and the United States Defendants also reached an agreement and stipulated that Plaintiffs had incurred

---

[1] The Court originally assigned equitable shares of 50% to Plaintiffs, 25% to the Sanzari Defendants, 2% to the United States Defendants, and an orphan share of 23% to the Commissioner. The final allocation was determined after distributing the Commissioner's orphan share pro rata between Plaintiffs, the Sanzari Defendants, and the United States Defendants.

3

$1,729,279 in recoverable costs plus interest under § 107(a) of CERCLA. (Letter of May 18, 2011) [392].

Concurrently, Plaintiffs and the Commissioner engaged in negotiations towards the settlement of their various claims. After a protracted period of negotiations between the parties, including the revision of an earlier draft agreement following commentary and objections from non-participating Defendants, including the United States Defendants, Plaintiffs and the Commissioner entered into a Consent Judgment [409-2] in which the Commissioner agreed to assume responsibility for the investigation and remediation of the Litgo Property. (*Id.*).

After holding hearings on June 13–14, 2011 and reviewing subsequent briefing concerning the amount of Plaintiffs' recoverable past costs under CERCLA and the Spill Act, the Court found that $1,560,236.78 of Plaintiffs' response costs are properly recoverable under CERCLA and $315,098.30 in response costs are properly recoverable under the Spill Act. (Op. and Order of Jan. 5, 2012 at 18–19). The Court also found that the Sanzari Defendants are liable for $421,236.96 of the response costs under CERCLA and $103,982.44 of the response costs under the Spill Act, as outlined in the Court's January 7, 2011 Opinion & Order. (*Id.* at 23). The Court additionally ordered the United States Defendants to pay their pro rata share of the response costs under CERCLA, as outlined in the Court's January 7, 2011 Opinion & Order and as stipulated to by the parties. (*Id.*). The Court further found that Plaintiffs are liable for the remaining recoverable costs under CERCLA and the Spill Act. (*Id.*). Because the parties had settled their RCRA claims, the United States Defendants did not participate in the hearing, *see* (Letter Order of May 27, 2011) [395], and no request was made concerning relief under RCRA.

Plaintiffs now seek litigation costs from the United States Defendants as a "prevailing party" under Section 7002(e) of RCRA.

4

III.   ANALYSIS

When Congress enacted RCRA in 1976, it sought to close "the last remaining loophole in environmental law, that of unregulated land disposal of discarded materials and hazardous wastes." *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 399 F.3d 248, 258 (3d Cir. 2005) (citing H.R. Rep. No. 1491, 94th Cong., 2d Sess. 4, reprinted in 1976 U.S.C.C.A.N. 6238, 6241). RCRA allows a civil action to be brought against any person, "including the United States Defendants and any other governmental instrumentality or agency . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). To promote such suits, RCRA provides that a court in "issuing any final order in any action" pursuant to RCRA "*may* award costs of litigation (including reasonable attorneys' and expert witness fees) to any prevailing or substantially prevailing party, *whenever the court determines such an award is appropriate*." 42 U.S.C. § 6972(e) (emphasis added). To qualify as a "prevailing or substantially prevailing party," the Supreme Court of the United States has previously held that a plaintiff must achieve "at least some relief on the merits of his claim before he can be said to prevail." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001) (superseded in part by statute on unrelated ground) (citation and internal quotation omitted). The requisite relief on the merits includes a final order of judgment or court-ordered consent decree that establishes a "material alteration of the legal relationship of the parties." *Id.* at 604. In contrast, a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605 (emphasis in original). In other words, "the change in the parties' legal

relationship must be the product of *judicial* action." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 228 (3d Cir. 2011) (citing *Buckhannon*, 532 U.S. at 605–06) (emphasis added). Even where a plaintiff is prevailing or substantially prevailing, ultimately the decision of whether to award attorney's fees is within the sound discretion of the district court. *See FCA Assocs. v. Texaco, Inc.,* No. 03- 6083T, 2008 WL 314511, at *10 (W.D.N.Y. Feb. 4, 2008).

Plaintiffs seek a total of $4,751,201.88 in litigation costs from the United States Defendants which include: (1) reimbursement of attorneys' fees for its retention of law firms Latham & Watkins LLP and Patton Boggs LLP in the amount of $118,388.75 and $4,188,672.82 respectively; (2) expert and consultant fees in the amount of $295,471.88 for Robert Zoch's services which included investigation of historical operations at the Litgo Property and surrounding properties, including the storage, handling and disposal of solid and hazardous wastes at the Litgo Property; (3) expert and consultant fees in the amount of $68,632.02 for Frank Getchell's investigation of possible sources of TCE and PCE contamination in the Western and Eastern Groundwater Plumes; (4) expert and consultant fees in the amount of $21,084.44 for Bruce Wolf's report and testimony concerning storage of hazardous substances at the JANR warehouse; (5) $25,258.54 in fees to HydroQual which performed investigations at the Litgo Property relating to the disposal of solid waste; (6) $19,331.42 in fees to J.M. Sorge for its work in investigating the soil and groundwater at the Litgo Property and providing technical support to Patton Boggs LLP; and (7) consultant fees in the amount $14,362.17 from History Associates, which researched the historical ownership and uses of the Litgo Property and surrounding properties.

Plaintiffs contend that they should be awarded these costs because they are prevailing or substantially prevailing parties within the meaning of RCRA section 6972(e) because, *inter alia*:

(1) in the June 10, 2010 Opinion the Court ruled that the Commissioner and the United States Defendants were liable parties under RCRA; (2) Plaintiffs received from the Commissioner a commitment to remedy the soil and groundwater at the Litgo Property; and (3) the Court dismissed the United States Defendants' RCRA counterclaim against Plaintiffs. (Pls.' Br. at 15–17). The United States Defendants argue that the claimed costs submitted by Plaintiffs encompass efforts unrelated to their RCRA claim against them. Moreover, United States Defendants contend that Plaintiffs cannot be prevailing parties within the meaning of section 6972(e) because a court must first issue a "final order" in a RCRA action in order for fees to be awarded and in this case Plaintiffs explicitly and voluntarily agreed to dismiss their RCRA claim for injunctive relief against the United States with prejudice, subject to a limited re-opener. (United States Defs.' Opp'n Br. at 10–11). The Court agrees with the United States Defendants.

In the June 10, 2010 Opinion the Court noted that the issue of what, if any, injunctive relief would be appropriate should be addressed at the hearing on damages. (June 10, 2010 Op. at 78 n.8). The Court further noted that "*[i]f Plaintiffs prevail on their RCRA claims* against the United States Defendants and the Commissioner they may seek to recover reasonable attorneys fees and litigation expenses. However, the Court is not [inclined] to think this will be warranted given the history of this case." (*Id*. at 79 (emphasis added)). Given this, the Court agrees with the United States Defendants that, at most, the Court's opinion was an interlocutory judicial pronouncement that the United States was "a liable person[] under RCRA." (United States Defs.' Opp'n Br. at 12 (citation omitted)); *see also* (Pls.' Mot. to Certify Issues for Appeal pursuant to 28 U.S.C. § 1292 [385] (requesting that the Court certify its Opinion and Order dated June 10, 2010 for interlocutory appeal)).

Because a final order has not been entered with respect to RCRA liability, and because Plaintiffs did not receive any injunctive relief against the United States on their RCRA claim, it stretches the imagination to suggest that the Plaintiffs should be considered a prevailing party as against the United States Defendants. As the Supreme Court of the United States has stated, to qualify as a prevailing party, "[t]he plaintiff must obtain an enforceable judgment *against the defendant from whom fees are sought*, or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (emphasis added). A mere "judicial pronouncement that the defendant has violated the law, . . . without an enforceable judgment on the merits, cannot render [the plaintiff] a prevailing party." *See Sierra Club v. City of Little Rock*, 351 F.3d 840, 845 (8th Cir. 2003) (citing *Pedigo v. P.A.M. Transp. Inc.*, 98 F.3d 396, 398 (8th Cir.1996)). Nor will a voluntary change in the relationship between the parties as a result of a lawsuit be sufficient to trigger a shift in the general rule that parties should pay their own fees. *See Sierra Club*, 351 F.3d at 843. Consequently, the Court does not believe Plaintiffs have established that the litigation costs would be properly awarded pursuant to 42 U.S.C. § 6972(e).

Even assuming arguendo that the June 10, 2010 Opinion & Order should be considered a final order and the Plaintiffs considered prevailing parties under section 6972(e) as a result of their stipulations with the United States Defendants, the Court would have grave reservations about awarding litigation costs in this case. Given the record before it, the Court agrees with United States Defendants that Plaintiffs have not met their burden in showing that its claimed costs are properly attributable to its RCRA action against the United States Defendants. Indeed, the fact that in some cases Plaintiffs have submitted the same invoices that they previously claimed were recoverable costs under CERCLA and the Spill Act belies the notion that Plaintiffs carefully removed billing entries and tasks related to non-RCRA claims.

In addition, considerations of equity weigh against awarding fees in this case. The Court notes that it has previously found that Plaintiffs' decisions to delay remediation in pursuit of litigation may have increased the threat to the environment and public health. *See* (Jan. 7, 2011 Op. & Order at 5). This factored significantly into the Court's equitable allocation of costs and indeed factored into the Court's consideration of recoverable expenses under CERCLA. *See* (Jan. 5, 2012 Op. & Order at 16, 19–21). Moreover, the Court believes that the types of cases in which attorneys' fees have traditionally been awarded are distinguishable from the present case. Fundamentally, this case involves Plaintiffs seeking remediation costs to clean up a modest parcel of land on which Plaintiffs hoped to turn a quick profit. This is not a case, as the United States Defendants note, where Plaintiffs instituted a RCRA action seeking to champion the community's interest against actual or threatened environmental contamination or otherwise protect the environment. Indeed, a review of Plaintiffs' general settlement terms with the United States Defendants underscore that this suit, at least vis-à-vis the United States Defendants, arguably was primarily aimed towards avoiding liability of cleanup rather than attempting to respond to the environmental threat of contamination. Based on this protracted and somewhat tortured history of litigation, the Court cannot say that Plaintiffs' suit strictly comports with RCRA's purpose of allowing private parties to bring suit when "genuinely acting as private attorneys general rather than pursuing a private remedy." *Envtl. Def. Fund, Inc. v. Lamphier*, 714 F.2d 331, 337 (4th Cir.1983); *see also Fallowfield Dev. Corp. v. Strunk*, Nos. 89-8644, 90-4431, 1993 WL 157723, at *16–17 (E.D. Pa. May 11, 1993) (declining to award litigation costs, noting that "[a]lthough Fallowfield argues that this case is really an attempt to safeguard the environment, it is clear that this case is really a dispute between two private parties arising out of a land sale contract. . . . By contrast, RCRA fees have been awarded in cases where private

9

citizens filed actions to stop pollution or toxic dumping on behalf of an entire community"). Consequently, the Court declines to order litigation costs.

IV.   CONCLUSION

For the foregoing reason, IT IS on this 13th day of April, 2012,

ORDERED that Plaintiffs' Motion for Litigation Costs Pursuant to 42 U.S.C. § 6972(e) is DENIED.

_____
ANNE E. THOMPSON, U.S.D.J.